IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Jerome Birdsong and ) | |
| Rocio Dominguez, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | Case No. 13-CV-2090 |
| ) | |
| Unified Government of ) | |
| Kansas City, Kansas, et al., ) | |
| ) | |
| Defendants. ) | |

Suggestions in Support of
PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs Jerome Birdsong and Rocio Dominguez, by and through their attorney of record, Rebecca Hamilton, offer these further suggestions in support of their motion for reconsideration. Plaintiffs would like to provided additional information regarding the on-going nature of the new information being made available to Plaintiff's counsel on issues highly relevant to this case, and the need for additional time to incorporate this information into a clear statement of the long standing policies and procedures of the Kansas City, Kansas Police Department and the Unified Government of Wyandotte County.

From the time this case was filed through mid March 2013, very little if any new information was available regarding the conspiracy against Jerome Birdsong and Rocio Rodriguez or the policy and procedures of the police department. But one week before the UG

and other defendants filed their motion to dismiss on March 22, 2013, counsel met former Detective Max Seifer and new sources of information about the inner workings of the Unified Government and the KCK police department became available.

Plaintiffs' counsel had requested the assistance of Max Seifert in a pending rape case in Wyandotte District Court. Mr. Seifert provided very helpful background information about department policies and procedures and indicated that Officer John Hudson might also have additional information about the investigation of the case.

Counsel met with John Hudson and learned that the head of the all detectives, Captain John Cosgrove, directed the investigation and made important decisions about the way the case was investigated and presented to the district attorney's office.  Strangely, John Cosgrove's name did not appear in any of the reports and he was not endorsed as a witness in the case.  Without Max Seifert and John Hudson, plaintiffs' counsel would have been left in the dark about the role John Cosgrove played in misdirecting the investigation.

Within the last few weeks, counsel has learned that the reason John Cosgrove's name did not appear on the witness list and his role in the investigation was concealed was because his conduct as a police officer had earned him a spot on a so-called "Brady/Giglio list."  The Wyandotte District Attorney's Office had adopted a policy that allowed known wrongdoers to be in charge of investigations as long as they were not "key witnesses"  for the State.

A major source of new information on policy and procedure is the Max Seifert vs. Unified Government of Wyandotte County, KS, et. al. Case 2:11-cv-02327.  Depositions of the major policy makers in the sheriff's office, the police department, and the district attorney's office are now available.  In their depositions, these policy makers discuss the way they treated

Max Seifert while the Barron Bowling case was pending, and how they singled him out for further shaming following the ruling in that case.  The policy makers also discuss their indifference to major wrongdoing by other members of the police department, and their willingness to promote the wrongdoers to the highest positions in the police department and sheriff's office while taking the precaution of concealing their identity and involvement by omitting their names from reports and witness endorsement lists.

      For example, in one deposition of a policy maker it is revealed that Defendant Steve Haulmark had over fifty different internal affairs complaints and a documented history of lying.  None of this, however,  prevented his recent promotion from Officer Haulmark to Captain Haulmark.

      Former KCK police officers who are sickened by the way Max Seifert and John Hudson have been treated are finally willing to talk about what they know and have seen with their own eyes.  Despite their fear that a similar fate may be in store for them if they talk, they are courageously stepping forward to help in what they had always believed to be a losing battle.

      But as they do so, more and more pieces of the puzzle are falling into place.  A clear but deeply disturbing picture is emerging.  A picture is emerging of a department that promotes some of the most serious wrongdoers, and punishes those who try to tell the truth.

      A picture is emerging of a police department where the way to get ahead is to first, develop a reputation in the department and on the streets as a bad ass and someone who doesn't play by the rules and second, demonstrate your loyalty to the department by covering your own wrongdoing and the wrongdoing of other officers.

Former officers are describing being taught how to lie about the use of force and other misconduct in order to prevent being disciplined or causing trouble for the department.  Former officer are saying that part of their training was to learn to look the other way when they saw other officers beating someone up or breaking the law.

Former officers are saying that they were told by those in authority in training sessions that it wasn't so much what happened in the field that really mattered, it was what was written in the report.  Former officers are reporting that stealing from citizens was not uncommon.  They are saying that what was taboo was not theft of property, but speaking openly about it.  One of the named defendants in this case was convicted in federal court for stealing during the execution of a search warrant.

During the ten years following Max Seifert's investigation into police misconduct and his refusal to look the other way when other officers violated the law, the wrongdoers have greatly increased their efforts to punish those who tell the truth and threaten to expose them, and promote the liars and worst offenders.

The availability of new information has been both a blessing and a curse, as it has complicated and delayed the efforts to respond to defendants' motion to dismiss.  A motion to dismiss is a critical and possibly final stage of this case.  These Plaintiffs' have suffered nearly every type of injury a police department can inflict, and counsel only asks for sufficient time to gather the necessary information and fully respond to the pending motions.

Counsel is asking for more than the usual amount of time to respond to a motion to dismiss.  However, it is both fortuitous and highly unusual that so much previously unknown and unavailable information has appeared *during the same time* as a response is being prepared.

Counsel would like to provide this court with as much relevant information as is possible at this stage of the proceedings. Likewise, counsel would like to provide the court with legal authority and well reasoned arguments addressing the legal issues presented in this case. Counsel has spent an average of three hours *every day* for the past two weeks meeting with previously unknown witnesses, reading previously unavailable depositions, and putting the pieces together. There are three more depositions that need to be read and incorporated into the narrative. There are three or four more witnesses to be interviewed that have indicated a willingness to talk about the policy and procedure issues. Counsel is requesting an additional fourteen days to pull in these final pieces of the puzzle, and an additional fourteen days to respond to the motions to dismiss and prepare a proposed amended complaint.

WHEREFORE, Plaintiffs respectfully request the Court to reconsider the order denying an extension of time, and to allow an extension of time to August 26, 2013 to reply to Defendants' Motion to Dismiss.

RESPECTFULLY SUBMITTED,

s/Rebecca Hamilton
Rebecca Hamilton
Bar Number 12224
816 Ann Avenue
Kansas City, KS 66101
Tel. (913 689-9080
Fax (913) 342-2016
Attorney for Plaintiffs

**Certificate of Service**

The undersigned certifies that on July 29, 2013, a copy of the foregoing was sent electronically to:

Sean P. McCauley

McCauley & Roach, LLC
527 W. 39th Street, Suite 200
Kansas City, Missouri 64111
Attorney for Defendants Mills and Bell

Jennifer Meyers
Unified Government Legal Department
701 N. 7th St., Ste 961
Kansas City, KS 66101
Attorney for Defendant Breshears

Henry Couchman
Unified Government Legal Department
701 N. 7th St., Ste 961
Kansas City, KS 66101
Attorney for all other Defendants

/s Rebecca Hamilton
Rebecca Hamilton