# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEROME BIRDSONG and )
ROCIO DOMINGUEZ, )
            )
           Plaintiffs, )
            )
            )
vs.             )     Case No. 13-2090-JAR
            )
UNIFIED GOVERNMENT OF )
WYANDOTTE COUNTY/KANSAS, )
CITY, KANSAS, et al., )
            )
           Defendants. )
_____)

## MEMORANDUM AND ORDER

Plaintiffs bring this removal action under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments based on unlawful searches and seizures, excessive force, and denial of due process against Defendants Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"), and against Officer P.J. Locke, Officer Travis Toms, Officer Joseph Reyes, Officer Steve Haulmark, Officer Nathan Doleshal, Officer Phil Trusskey, Officer Jeffery Bell, Officer Michael Mills, Detective Stewart Littlefield, John Does 1-10, Chief of Police Rick Armstrong, and Chief of Police Sam Breshears, in their individual and official capacities. In March 2013, soon after the case was removed, Defendants moved to dismiss: Defendants Bell and Mills filed a Motion to Dismiss Counts 11, 12, 13, 14, and 15 of the First Amended Complaint (Doc. 13),[1] and the remaining Defendants filed a Motion to Dismiss (Doc. 20) all counts alleged against them. Both motions argue that several of the claims in the First Amended Complaint are barred by the applicable statute of limitations and that others fail to

---

[1]The First Amended Complaint is the operative removed pleading.

state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Plaintiffs' response was due on August 26, 2013; it was not filed until August 27, 2013, without leave. Defendants argue that the Court should not consider this untimely response. Three weeks after the response was filed, and after the reply time on the motions to dismiss had expired, Plaintiffs filed a Motion for Leave to Amend, attaching a proposed Second Amended Complaint (Doc. 41) that added substantial additional factual material, two new defendants, and new claims. Defendants oppose the motion for leave to amend on grounds of delay and futility.

The Court first addresses the motion for leave to amend because if leave is granted, the motions to dismiss the First Amended Complaint are moot. As described more fully below, the Court finds that the motion for leave to amend should be granted in part and denied in part. The Court finds that the proposed amendments are futile with respect to counts 2, 3, 4, 6, 7, 8, 9, 10, and 12 of the proposed Second Amended Complaint because they are barred by the statute of limitations. The proposed amendment is not futile and will be allowed with respect to counts 1, 5, 11, 13, 14, 15, and 16 of the proposed Second Amended Complaint. The motions to dismiss the First Amended Complaint are therefore moot.

## I.     Procedural Background

This case was originally filed in Wyandotte County, Kansas District Court on October 26, 2012. It was removed on February 20, 2013. On March 11 and March 22, Defendants filed their motions to dismiss. Both motions argue that several counts are barred by the statute of limitations or otherwise fail to state a claim upon which relief can be granted, and that certain defendants are entitled to qualified immunity. Plaintiffs sought and obtained four extensions of time to respond to these motions. Plaintiffs' "Final Motion for Extension of Time," filed on July

9, 2013, was denied because it was filed after the July 1, 2013 deadline established by the Court in its previous order. Plaintiffs sought reconsideration. The Court reluctantly granted Plaintiffs' motion to reconsider, finding that since no scheduling order was in place yet, Defendants' risk of prejudice was low. The Court allowed Plaintiffs until August 26, 2013 to respond and explained that the Court would not favorably entertain any further extensions. On August 27, 2013, Plaintiffs filed their response, without seeking leave to file out of time.[2] It was eight pages in length and failed to specifically address many of the arguments raised in the motions to dismiss. Defendants replied on September 5, 2013.

On September 18, 2013, Plaintiffs moved to amend the complaint, attaching a proposed Second Amended Complaint. The proposed amendments replaced the John Doe Defendants with Detectives Patrick Greeno and Jerome Gorman. It re-labeled the unlawful arrest claims as malicious prosecution claims and clarified which claims were associated with which police encounters. It added approximately forty pages of allegations, most of which are relevant only to the official capacity claims against the Unified Government that it had a policy or custom of sanctioning Fourth and Fourteenth Amendment violations. The motion to amend was fully briefed on December 18, 2013. In their reply, Plaintiffs address the arguments raised in the motions to dismiss, as applied to the proposed pleading.

## II.    Standard for Leave to Amend

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[3] A party is typically granted leave to amend under this rule unless there is "a showing of undue

_____

[2]*See* D. Kan. Rules 7.4(b), 15.1(a).

[3]Fed. R. Civ. P. 15(a)(2).

delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[4]   A proposed amendment is futile if the amended complaint would be subject to dismissal.[5]   Defendants argue that leave to amend should be denied based on undue delay, and because the proposed amendment is futile.

## III.    Delay

Undue delay alone is sufficient to deny a motion to amend; there need not be a showing of prejudice.[6]   In the Tenth Circuit, undue delay may be found "when the party filing the motion has no adequate explanation for the delay."[7]   The Court may also deny leave to amend if the moving party "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint."[8]   Moreover, motions for leave to amend are correctly denied

> when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target" to "to salvage a lost case by untimely suggestion of new theories of recovery," present "theories seriatim" in an effort to avoid dismissal, or to "knowingly delay[ ] raising [an] issue until the eve of trial."[9]

While liberality of amendment is important, it is equally important that "there must be an end

---

[4]*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[5]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[6]*See, e.g.*, *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1229–30 (D. Kan. 2002).

[7]*Minter v. Primer Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

[8]*Cuenca*, 205 F. Supp. 2d at 1230.

[9]*Minter*, 451 F.3d at 1206 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001);  *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994); *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995)).

finally to a particular litigation."[10]

Here, the Court is troubled by Plaintiffs' delay in bringing this motion. Plaintiffs delayed responding to the motions to dismiss for five months. The main argument asserted by Defendants in their motions to dismiss is that the statute of limitations bars Plaintiffs' claims. This defense turns on legal and factual arguments surrounding the claims' accrual dates. Plaintiffs' proposed amendments restyled three claims as malicious prosecution claims, but the bulk of information added in the proposed amended complaint is relevant only to the official capacity claim against the Unified Government. Plaintiffs delayed responding to the motions to dismiss for five months and then failed to respond to the motions to dismiss on the date that the Court explicitly provided was the final deadline to do so. Plaintiffs then waited three weeks to file the motion for leave to amend, causing a needless reply brief to be filed by Defendants Bell and Mills that turned out to be moot. Plaintiffs' contention that they have been diligent throughout these proceedings is belied by the record.

More troubling than the delay is the fact that Plaintiffs made no attempt to seek leave to file their response to the motion to dismiss out of time, nor to explain how their delay constitutes excusable neglect.[11] Plaintiffs simply waited until the reply time passed before seeking leave to amend to add over forty pages of information to the complaint and to restyle certain counts to survive the statute of limitations defense.

Notwithstanding this delay, the Court declines to deny leave to amend on this basis alone.

---

[10]*Pallottino*, 31 F.3d at 1027.

[11]Plaintiffs should be well aware of the need to make such a showing given that the August 26, 2013 deadline was the result of the Court granting their motion to reconsider denial of their final motion for extension of time for failure to file it before the previous deadline. *See* Doc. 37 at 1–2 (discussing excusable neglect).

There has been no deadline established in the case for filing a motion for leave to amend. While this is largely due to the fact that the motions to dismiss have been pending for so long, postponing a scheduling conference that would establish such a deadline, it is nonetheless important because Plaintiffs were still technically within the window of time to amend. However, the Court is loathe to condone the dilatory practices employed by Plaintiffs so far in this case. Plaintiffs should not be rewarded for flouting the orders of this Court.

Given the prejudice caused by Plaintiffs' decisions to seek leave to amend so long after delaying their response to the motions to dismiss, not to file their response along with a proposed amendment to aid in the parties' and Court's analysis, and not to file the proposed amendment until after the reply deadline had elapsed, the Court finds that sanctions are in order. Under 28 U.S.C. § 1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." The Court finds that Plaintiffs' attorney shall reimburse Defendants Bell and Mills for the reasonable attorneys' fees incurred in replying to the response to the motion to dismiss.[12] These Defendants shall submit an application for reasonable attorney fees incurred in filing that reply by February 7, 2014, in accordance with D. Kan. Rule 54.2.

## IV.    Futility

The Court now proceeds to determine whether the motion for leave to amend should be denied on grounds of futility. A proposed amendment is futile if the amended complaint would

---

[12]Only Defendants Mills and Bell filed a substantive reply memorandum (Doc. 40).

be subject to dismissal.[13]  To survive a motion to dismiss, a complaint must present factual

allegations, assumed to be true, that "raise a right to relief above the speculative level" and must

contain "enough facts to state a claim to relief that is plausible on its face."[14]  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[15]  In responding to the motion

for leave to amend, Defendants incorporate many of the arguments set forth in their briefs on the

motion to dismiss.  The Court considers these arguments in addition to those briefed on the

motion to amend in deciding whether Plaintiffs' proposed amendments are futile.

Defendants argue that the proposed Second Amended Complaint would be subject to

dismissal because: (1) Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, and 16 are barred by the

statute of limitations; (2) Counts 11 and 13 are futile because they fail to state a claim upon

which relief can be granted; (3) many of the factual amendments would be stricken because they

are irrelevant, unsupported, scandalous, and possibly slanderous; and (4) Counts 1, 5, and 11 and

14, 15, and 16 should be "stricken" because they are new claims.

A.      **Factual Allegations and Claims Asserted in the proposed Second Amended
        Complaint**

The First Amended Complaint alleged eighteen counts under the Fourth and Fourteenth

Amendments tied to a series of unlawful searches, arrests, and charges against Plaintiffs Jerome

Birdsong and Rocio Dominguez in May 2010, by Unified Government police officers.  Plaintiffs

alleged claims for unlawful arrest, excessive force, unlawful searches and seizures, due process

---

[13]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[14]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[15]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

violations, interference with parental rights, conspiracy to deprive Plaintiffs of liberty interests, failure to train, supervisory liability, and an official capacity claim based on the policies, procedures and practices of the Unified Government. These claims stem from essentially three different sets of charges brought against Birdsong, and several different related encounters involving Dominguez. While some of the facts are further elaborated on in the proposed amended pleading, there are no additional police encounters alleged other than those described in the First Amended Complaint.

Birdsong's first arrest occurred on May 3, 2010. Birdsong was driving a van carrying Dominguez and their two children that was stopped by Officers Toms and Reyes in Kansas City, Kansas. Officer Haulmark arrived after the officers searched the vehicle. Birdsong was arrested on a traffic offense and placed on a 48-hour hold on felony marijuana charges. He was not allowed to post bond. Birdsong was released on May 5, 2010 on the traffic charge and no felony charges were filed within the 48-hour hold period. Dominguez was charged with possession of marijuana.

The second arrest occurred on May 7, 2010. Officers obtained an arrest warrant for Birdsong on possession of marijuana. Officers involved in the first encounter set up surveillance of Dominguez's apartment and waited for her to leave with her two children. They followed her and stopped her vehicle. Officer Doleshal told Dominguez that they needed to search her apartment and forced her to return to the apartment with police vehicles in tow. While Dominguez was out, Birdsong remained at the apartment with his young son. A drug dealer knocked on the door and asked Birdsong to come outside and meet his cousin. Birdsong and his son followed this friend out to a Ford Explorer, where the friend told Birdsong he just wanted

him to meet his cousin.  The friend then tossed Birdsong a bag of methamphetamine at the same time that officers arrived with Dominguez.  Their guns were drawn on Birdsong and his son, who was in his arms.  Birdsong ran, believing that they might fire, and when he saw the officers run after him, he sat his son down in the event they tried to shoot or tackle Birdsong.  Birdsong was tackled and beaten.  Birdsong was charged with abuse of a child and the officers searched Dominguez's apartment, tearing it apart.  While being treated for his injuries at the hospital, officers bragged to Birdsong about people they had shot and killed by name.

The third arrest occurred on May 15, 2010 when Birdsong was arrested for aggravated battery on a law enforcement officer.  The actual person who committed this crime was Mike Eckstein—police officers had previously associated the aggravated battery against Officer Trusskey with Eckstein, but Trusskey identified Birdsong as the perpetrator.  When police officers arrested Birdsong, they placed him in a chokehold, struck him, and threw his body against a neighbor's door.

Police continued to approach Dominguez for questioning on Birdsong's aggravated battery charge after his arrest.  In November 2010, Dominguez was harassed by officers on two occasions, one of which involved six patrol cars surrounding her vehicle at Paul's Drive-In. Dominguez did not feel free to leave and called 911 in order to report what she deemed as harassment.   Despite strong evidence that Eckstein, and not Birdsong, committed the aggravated battery crime, police continued to prosecute Birdsong.  At a preliminary hearing, Officer Trusskey lied under oath that Birdsong struck him with a vehicle.  A few weeks later, the prosecutor advised Birdsong's attorney that Trusskey now realized that he had misidentified Birdsong.  The case was then dismissed.

9

The proposed Second Amended Complaint contains the same essential factual allegations, although it provides more detail, restyles certain claims, and more specifically sets forth which claims are tied to which events.  The proposed Second Amended Complaint asserts three new claims of malicious prosecution, which replace the claims of unlawful arrest in the First Amended Complaint—Counts 1, 5, and 11.  Count 1 relates to the May 5, 2010 arrest, Count 5 relates to the May 7, 2010 arrest, and Count 11 relates to the May 15, 2010 arrest.  The proposed pleading also drops the previous claims of conspiracy to deprive Plaintiffs of their liberty interests.

In addition to the malicious prosecution claims, the proposed Second Amended Complaint continues to assert several other claims for relief.  With respect to the May 5, 2010 encounter, it further alleges Count 2 for Excessive Force against Birdsong; Count 3 for Unlawful Seizure of Birdsong's property  under the Fourth and Fourteenth Amendments; and Count 4 for Unlawful Search of Dominguez.

With respect to the May 7, 2010 encounter, the proposed Second Amended Complaint further alleges Count 6 for Unlawful Search and Seizure of Dominguez; Count 7 for Unlawful Search of Birdsong; Counts 8 and 9 for Excessive Force against Birdsong; and Count 10 for Interference with Birdsong's Parental Rights and Due Process.

With respect to the May 15, 2010 encounter, the proposed Second Amended Complaint further alleges Count 12 for Excessive Force against Birdsong; and Count 13 for Unlawful Seizure against Dominguez.

Finally, the proposed Second Amended Complaint alleges Count 14 for Supervisory Liability, Failure to Train; Count 15 for Supervisory Liability, Failure to Supervise; and an

official capacity claim in Count 16 against the Unified Government for damages and  injunctive relief.

## B.      Statute of Limitations

### 1.      Limitations Period and Accrual Rules

The statute of limitations for claims brought under 42 U.S.C. § 1983 are governed by the personal injury statutes for the state in which the federal district court sits.[16]  While state law provides the statute of limitations period, federal law determines the date on which the claim accrues and the statute begins to run.[17]  State law also determines any tolling of the limitations period, although federal law may allow for additional tolling in rare circumstances.[18]  There are no tolling arguments before the Court.  At issue is the limitations period for the claims asserted in the proposed Second Amended Complaint, and the dates of accrual.

All claims brought under § 1983 are uniformly characterized as personal injury torts for statute of limitations purposes.[19]  The Court is not to try to analogize § 1983 claims to more than one state cause of action.[20]  In Kansas, the statute of limitations period for personal injury actions is two years.[21]  This limitations period applies to all of Plaintiffs' claims, including those alleging

---

[16]*Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 251 (1985)).

[17]*Id.* (citing *Wallace v. Kato*, 549 U.S. 384 (2007)).

[18]*Id.* (citation omitted).

[19]*Wallace*, 549 U.S. at 387; *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984).

[20]*Garcia*, 731 F.2d at 650.  Defendants incorrectly suggest that a one-year statute of limitations applies to § 1983 claims for malicious prosecution, citing the Kansas statute that provides for a one-year limitations period for the tort of malicious prosecution.  *See* K.S.A. § 60-514(b); *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (reiterating that the statute of limitations on § 1983 claims is determined by the personal injury statute in the state in which the claim arose).

[21]K.S.A. § 60-513(a)(4).

malicious prosecution.

Under federal law, § 1983 claims generally rely on the common law tort principle that the claim accrues when the plaintiff "has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[22] "A civil rights actions accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[23] It is not necessary that the plaintiff know of all the evidence that he ultimately relies on for the statute of limitations to accrue.[24]

The Tenth Circuit has held that "[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."[25] But with respect to claims involving unconstitutional imprisonment, the Tenth Circuit has more recently explained:

> We have held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims. "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment. If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution. These torts are only analogies because § 1983 suits ultimately rest on the Constitution, not on state (or federal) common law. However, these analogies guide us in applying rules

---

[22]*Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Febar Corp. of Cal.*, 522 U.S. 192, 201 (1997)) (citations omitted).

[23]*Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).

[24]*Id.*

[25]*Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).

for the accrual of a cause of action.

. . . .

In summary, two claims arise from an allegedly unconstitutional imprisonment as analysis "shifts" from the Fourth Amendment to the Due Process Clause. The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment. That claim accrues when the plaintiff is released or legal process is instituted justifying that imprisonment. The period of time between the institution of that process and its favorable termination—through acquittal, habeas corpus, voluntary dismissal, etc.—forms a second claim, arising under the Due Process Clause. That claim accrues, at the earliest, when favorable termination occurs.[26]

## 2.     Application to Plaintiffs' Claims

The law makes clear that Plaintiffs' Fourth Amendment claims of excessive force, unlawful search, and seizure of property accrued on the dates on which they occurred. Therefore, the excessive force claims accrued on May 3, 2010 (Count 2), May 7, 2010 (Count 8), May 7, 2010 (Count 9), and May 16, 2010 (Count 12). The unlawful search claims accrued on May 3, 2010 (Count 4), May 7, 2010 (Count 6),[27] and May 7, 2010 (Count 7). The unlawful seizure of property claim alleged in Count 3 is likewise time-barred. Birdsong's claim that he was deprived of his property seized during the May 3, 2010 traffic stop accrued on the date on which the seizure occurred. Plaintiff Birdsong did not file his Complaint in state court until October 26, 2012—more than two years after these claims accrued. As such, they would be subject to dismissal because they are time-barred. The Court must deny leave to amend to add

---

[26]*Mondragon v. Thompson*, 519 F.3d 1078, 1082–83 (10th Cir. 2008) (quoting and citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004)) .

[27]Count 6 alleges Unlawful Search and Seizure as to Dominguez based on the May 7, 2010 incident. To the extent Count 6 deals with unlawful seizure, the Court discusses it below.

Plaintiffs' proposed Counts 2, 3, 4, 7, 8, 9, and 12 as they would be barred by the statute of limitations.

In Count 10, Birdsong alleges a claim for "Interference with Parental Rights and Due Process." He alleges that on May 7, 2010, Officers Haulmark and Toms told him that he would never get his son back and Officer Toms told him that Birdsong's son would be calling him "daddy." Officer Haulmark took Plaintiff's son into police protective custody. Again, Birdsong's claim in Count 10 clearly accrued on May 7, 2010. This is the date that Birdsong knew about the facts giving rise to his injury— the removal of his son from his custody based on false statements by Officers Haulmark and Toms. The Court thus denies Plaintiffs' motion for leave to amend as to Count 10 as it would be subject to dismissal as time-barred.

Plaintiffs propose amendments to Counts 1, 3, and 5 that restyle the claims from "unlawful arrest" claims, to "malicious prosecution" claims. As described above, to the extent Plaintiffs allege valid malicious prosecution claims, those claims accrued when favorable termination occurred. To the extent these claims are properly characterized as unlawful arrest or imprisonment claims under the Fourth Amendment, they accrued when Plaintiff was released or when the legal process was instituted. To determine whether Plaintiffs' claims in Counts 1, 3, 5, and 6 are properly construed as malicious prosecution or unlawful arrest claims, the Court must evaluate the facts alleged and the injuries claimed to have been sustained.

Plaintiffs have renamed in the proposed Second Amended Counts 1, 5, and 11 as malicious prosecution claims arising under the Fourth and Fourteenth Amendments. A malicious prosecution claim arises under the Fourth Amendment "only when a plaintiff alleges the legal process itself to be wrongful. If a plaintiff challenges merely the confinement *after* the

institution of the legal process, but not the process itself, 'the protections offered by the Fourth Amendment do not apply.'"[28] Such a claim challenges the probable cause determination made at either the probable cause hearing, or in support of an arrest warrant.[29]

In Count 1, Birdsong challenges his May 3, 2010 arrest for possession of marijuana as lacking probable cause. He complains that he was held for 48 hours without being brought before a magistrate judge for a probable cause determination and then released two days later. He states: "As a direct and proximate result of the Defendants' arrest and detention of the Plaintiff for 48 hours without probable cause, Plaintiff was deprived of his right to be secure in his person against unreasonable search and seizure. . . ." Contrary to Plaintiffs' spin in the briefs, this claim, as written, does not challenge Plaintiff's detention after the institution of legal process. It explicitly challenges Birdsong's detention *without* legal process—a classic false imprisonment claim.[30] A false imprisonment claim accrues at the time that legal process is instituted, or the plaintiff is released. Here, that occurred on May 5, 2010, well over two years before the Complaint was filed. Leave to amend is denied as to this theory of relief in Count 1.

However, the facts alleged in Count 1 are inconsistent about whether Birdsong was charged with a felony after the 48-hour hold, and if so, whether Count 1 encompasses a post-legal process claim as to that charge. He alleges in ¶ 250 that he was released on May 5, 2010. And in ¶ 23, Plaintiff alleges that "[n]o felony charges were filed within the 48 hour period of incarceration." Indeed, Plaintiffs' other claims in this case are based on his May 7 and May 15

---

[28]*Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)).

[29]*Id.* at 798–99.

[30]*See Mondragon*, 519 F.3d at 1083.

arrests; he was not detained when those events occurred. But in ¶ 251, Birdsong alleges that his "detention on these charges continued until August 12, 2011, when case 10CR564 was dismissed in its entirety." To the extent Plaintiff challenges the probable cause determination that formed the basis for an arrest warrant to be later issued, this claim is properly characterized as a malicious prosecution claim and it accrued on August 12, 2011 when the case was dismissed. To the extent this is the basis of Plaintiff's claim in Count 1, leave to amend is granted, but Plaintiff shall clarify in his Second Amended Complaint the facts that give rise to this claim.

Count 5 challenges Birdsong's arrest without probable cause on May 7, 2010, for abuse of a child. Birdsong was arrested without a warrant on that charge—it was based on the allegation that Birdsong threw his son down when he was pursued by police that day.[31] The facts alleged make clear that Birdsong was in custody for some period after this arrest, but again, he was clearly released by the time he was arrested again on May 15, 2010. The facts alleged do not specify when he was released, at which point his claim would shift from an unlawful arrest claim to one for malicious prosecution. The proposed Second Amended Complaint alleges that a preliminary hearing was set for all three of the cases at issue; it later refers to a preliminary hearing on the May 15 charges that was held on February 14, 2011. Again, to the extent Birdsong merely challenges his arrest without probable cause on the abuse of a child charge, this claim accrued by May 15, 2010 at the latest, or whenever he was released pending trial on that charge. To the extent Plaintiff challenges the legal process and probable cause determination on that charge, it did not accrue until the case was dismissed in 2011, and is therefore timely.

---

[31]The proposed Second Amended Complaint states that officers also obtained a warrant that day to arrest Birdsong for possession of marijuana. The facts giving rise to this encounter suggest that the officers initially set out to execute this arrest warrant.

Count 6 alleges that Dominguez was taken into custody without probable cause on May 7, 2010. This claim refers to the traffic stop, when officers forced Dominguez to take them to her apartment where they planned to serve an arrest warrant on Birdsong. There are no allegations that Dominguez was arrested; this claim challenges her involuntary detention by officers while they attempted to execute the warrant on Birdsong, and to search the apartment after his arrest. Because no charges were filed against Dominguez, the claim accrued when she was released on the same day, May 7, 2010, and it is thus time-barred.

Count 11 challenges the illegal arrest and failure to investigate surrounding the charges against Birdsong for aggravated battery on a law enforcement officer, on May 15, 2010. In this claim, Birdsong challenges his warrantless arrest without probable cause, and the process by which he continued to be prosecuted. This claim clearly accrued on the date of dismissal, February 28, 2011, and is timely.

In their reply brief on the motion for leave to amend, Plaintiffs argue that all of the claims alleged in the proposed Second Amended Complaint should be construed as overt acts in furtherance of a conspiracy to maliciously prosecute them, thus allowing accrual dates on the latest date of dismissal in 2011. While the Court construes the facts alleged in the proposed amended pleading in the light most favorable to Plaintiffs in determining futility, it cannot agree that the proposed amended pleading is susceptible to the claim construction suggested by Plaintiffs. The proposed pleading clearly enumerates seventeen separate claims, organized into three categories that relate to each of the three police encounters to which Plaintiffs were subjected. To be sure, Plaintiffs allege malicious prosecution claims that this Court finds survive the statute of limitations defense. But rather than enumerate a single claim for conspiracy to

17

maliciously prosecute, Plaintiffs also allege sixteen separate counts of relief, under both the Fourth and Fourteenth Amendments, that cover the actions of Unified Government officers and supervisors with respect to the three separate police encounters in May 2010. Plaintiffs do not allege that these individual claims are merely overt acts of a larger conspiracy. They allege separate claims for relief. While facts and evidence pertaining to the time-barred claims may be relevant to establish Plaintiffs' malicious prosecution claims on summary judgment or at trial, they cannot withstand dismissal as independent causes of action because they are barred by the statute of limitations.

In sum, proposed Counts 2, 3, 4, 6, 7, 8, 9, 10, and 12 are barred by the statute of limitations, so amendment of these claims would be futile and leave must be denied. Furthermore, the supervisory liability and official capacity claims alleged in proposed Counts 14, 15, and 16 are futile to the extent they rely on underlying police conduct alleged in the time-barred counts. Proposed Counts 1, 5 and 11 would not be barred by the statute of limitations to the extent they allege claims for malicious prosecution that challenge the legal process associated with the charges at issue and not merely the initial unlawful arrests. Likewise, the supervisory liability and official capacity claims associated with those malicious prosecution claims survive.

### C. Failure to State a Claim on Counts 11 and 13

Count 11 alleges a malicious prosecution claim against Officers Trusskey, Mills, Bell, and Littlefield related to Birdsong's May 15, 2010 arrest and subsequent prosecution for aggravated battery of a law enforcement officer. Defendants Bell and Mills argue that the claim would be subject to dismissal because a judge made a probable cause determination which, as a

18

matter of law, broke the chain of causation between any unlawful arrest and prosecution. The Tenth Circuit analogizes § 1983 malicious prosecution claims to the common law tort of malicious prosecution for the purpose of determining the elements of the claim: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[32]

In arguing that this claim is subject to dismissal, Defendants cite caselaw stating that where a judge independently determines at a probable cause hearing that the evidence was sufficient to support probable case, the chain of causation between an unlawful arrest and subsequent prosecution is broken.[33] But this rule does not apply when the plaintiff alleges that police fabricated evidence or provided misleading or perjured testimony at the preliminary hearing.[34] Here, Plaintiff alleges that police officers failed to investigate, ignored exculpatory evidence, and committed perjury at the preliminary hearing. In determining whether probable cause exists under these circumstances, the fact finder would consider "whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to prosecute."[35] Plaintiff has alleged sufficient facts to support his claim that probable

---

[32]*McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011).

[33]*See, e.g.*, *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996).

[34]*See id.* (explaining that this rule applies *unless* there are allegations of pressure or misstatements by police officers).

[35]*McCarty*, 646 F.3d at 1286.

cause did not exist absent these facts and he therefore has stated a claim upon which relief can be granted on proposed Count 11.

Proposed Count 13 alleges that Officers Mills and Haulmark[36] unlawfully seized Dominguez in November 2010. According to the proposed Second Amended Complaint, Dominguez "was followed or surrounded by police officers while she was driving her van" on two occasions. On the second occasion, Officer Toms drove by and circled her car when she was parked at Paul's Drive-In. As many as six more officers arrived in patrol cars, and police questioned her for a few minutes. The officers left only after Dominguez called 911, eventually spoke to a detective, and asked why she was being harassed. During this encounter, Dominguez did not feel free to leave.

The Fourth Amendment protects "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[37] It is well established that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."[38]

The Tenth Circuit has defined three types of police-citizen encounters:

> (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited

---

[36]Proposed Count 12 is alleged against "Mills and Holloway." Given the factual allegations earlier in the proposed pleading, and given that there is no named Defendant by the name of Holloway, the Court assumes Plaintiffs intended to name Haulmark on this count.

[37]U.S. Const. amend. IV.

[38]*Whren v. United States*, 517 U.S. 806, 809-10 (1996).

> scope and duration and must be supported by a
> reasonable suspicion of criminal activity; and (3)
> arrests, the most intrusive of Fourth Amendment
> seizures and reasonable only if supported by
> probable cause.[39]

Defendants argue that the facts alleged about this November 2010 encounter are insufficient to support a Fourth Amendment seizure. They argue that the facts do not even suggest a *Terry* stop because there was no physical force or display of authority. But the question of whether a seizure occurred is highly factual: whether a reasonable person in Dominguez's position would have believed that she was free to leave.[40] Relevant factors that aid in this determination are:

> the location of the encounter, particularly whether the defendant is
> in an open public place where he is within the view of persons
> other than law enforcement officers; whether the officers touch or
> physically restrain the defendant; whether the officers are
> uniformed or in plain clothes; whether their weapons are
> displayed; the number, demeanor and tone of voice of the officers;
> whether and for how long the officers retain the defendant's
> personal effects such as tickets or identification; and whether or
> not they have specifically advised defendant at any time that he
> had the right to terminate the encounter or refuse consent.[41]

The Court cannot find, under the liberal pleading standard that applies to assessing whether this claim would be subject to dismissal, that Plaintiffs have not alleged a plausible claim that Dominguez was seized during this encounter. Assuming the facts alleged are true, she was in a public place surrounded by six patrol cars while being questioned. Dominguez felt

---

[39]*United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007) (internal quotation omitted).

[40]*See, e.g.*, *United States v. Lopez*, 443 F.3d 1280, 1283–84 (10th Cir. 2011).

[41]*Id.* at 1285 (quotation omitted).

intimidated enough to call 911 and complain of harassment, and only then did the officers leave. These facts are sufficient to state a § 1983 Fourth Amendment claim upon which relief can be granted.

### D.      New Claims and Allegations

The Unified Government Defendants argue that if the Court allows leave to amend, it should be limited to allegations related to Plaintiffs' original claims; they ask the Court to "strike" any new claims, including the new claims for malicious prosecution and their corresponding supervisory liability claims.  Defendants Bell and Mills argue that the new allegations about the custom and practice of constitutional violations by the Unified Government should be stricken, arguing that they are irrelevant, scandalous, and slanderous.

The Court denies both requests.  As to the new claims, the Court does not find that leave should be denied merely because Plaintiffs restyled their existing factual allegations as different claims for relief.  As described in the Court's discussion of the statute of limitations defense, the facts surrounding these claims were not significantly altered by the proposed Second Amended Complaint.  While their restyling does affect the accrual analysis, Defendants were on notice of the facts that form the basis of those claims.  Since discovery has not yet commenced, Defendants are not prejudiced by the addition of these new claims.

The Court also denies Defendants' request to strike the new allegations in support of the official capacity claim.  The Unified Government may be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity

22

is responsible under § 1983."[42]   The new allegations at issue go to Plaintiffs' claim that the Unified Government had a policy or custom that encouraged Fourth and Fourteenth Amendment violations such as those alleged in Counts 1, 5, 11, and 13.  But Defendants' complaints about relevance and prejudice are evidentiary.  Questions of evidence are not properly before this Court on a motion for leave to amend.

## V.     Conclusion

As described in this opinion, the Court will grant Plaintiffs leave to amend in part, allowing to survive the malicious prosecution claims, one Fourth Amendment unlawful seizure claim, and their corresponding supervisory liability and official capacity claims.  But the remaining claims alleged in the proposed Second Amended Complaint, which were largely carried over from the First Amended Complaint, are clearly time-barred.  The Court is troubled by the waste of judicial resources and attorney fees spent in reaching this outcome.  Plaintiffs were on notice of the timeliness issue in March 2013 when Defendants filed their motions to dismiss.  Of course the rules allow a party to cure pleading deficiencies identified in a motion to dismiss: a plaintiff may amend as a matter of course 21 days after service of the Rule 12(b) motion.[43]   Yet, rather than remedy the pleading deficiencies in a timely and efficient manner to allege malicious prosecution, Plaintiffs delayed responding to the motions to dismiss for five months, and when they finally sought leave to amend, failed to winnow down their claims to those that are timely.  All in all, resolution of these issues took nine months, effectively staying discovery in the process.  For this reason, the Court declines to simply allow Plaintiffs to amend

---

[42]*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

[43]Fed. R. Civ. P. 15(a).

with no consequence for the dilatory practices they used to achieve that result. Defendants Bell and Mills are entitled to their reasonable attorney fees expended in preparing a reply memorandum in September 2013, on motions to dismiss that are ultimately moot in light of the amended pleading.

**Plaintiffs are ordered to file their Second Amended Complaint, in strict accordance with the Court's ruling, by no later than February 7, 2014. The Court will not favorably entertain an extension of this deadline.** Once the pleadings are on file, this case will proceed to pretrial management and the parties should be prepared to embark on an efficient strategy for managing discovery and any further motions practice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Leave to Amend (Doc. 41) is **granted in part and denied in part**. The motion is denied as to proposed Counts 2, 3, 4, 6, 7, 8, 9, 10, and 12. The motion is further denied on the supervisory liability and official capacity claims alleged in proposed Counts 14, 15, and 16 to the extent they rely on underlying police conduct alleged in the time-barred counts. The motion for leave to amend is granted as to Counts 1, 5, 11, and 13. The motion is further granted on the supervisory liability and official capacity claims alleged in proposed Counts 14, 15, and 16 to the extent they rely on underlying police conduct alleged in Counts 1, 5, 11, and 13. **Plaintiffs shall file their Second Amended Complaint in accordance with the Court's ruling by no later than February 7, 2014**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants Bell and Mills' Motion to Dismiss Counts 11, 12, 13, 14, and 15 of the First Amended Complaint (Doc. 13), and the remaining Defendants' Motion to Dismiss (Doc. 20) are **moot**.

**IT IS FURTHER ORDERED BY THE COURT** that **Defendants Bell and Mills shall file an Application for Reasonable Attorney Fees, in accordance with D. Kan. Rule 54.2, by February 7, 2014.**

**IT IS SO ORDERED**.

Dated: January 10, 2014

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE