IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEROME BIRDSONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-2090-JAR |
| ) | |
| UNIFIED GOVERNMENT OF ) | |
| WYANDOTTE COUNTY/KANSAS, ) | |
| CITY, KANSAS, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to File Out of Time (Doc. 82) and Defendant Gorman's Motion to Dismiss (Doc. 74). The response to the motion to dismiss is fully briefed. As described more fully below, Plaintiffs' motion for leave to file out of time is denied. Thus, Defendant's motion to dismiss is granted as unopposed, and is further granted because Plaintiffs' claims against Defendant Gorman are time-barred and because he is protected by qualified immunity.

**I.     Factual and Procedural Background**

Defendant Gorman filed the motion to dismiss at issue on March 25, 2014.[1] Plaintiffs requested an unopposed extension of time to respond to Defendant's motion to dismiss on April 8, 2014,[2] which was granted; the deadline was extended to May 8, 2014.[3] On May 7, 2014, at 10:14 p.m., Plaintiffs' counsel requested from Defendant's counsel via email another extension

---

[1]Doc. 75.

[2]Doc. 78.

[3]Doc. 79.

of one week to complete the response.[4] Defendant's counsel agreed "provided the motion and proposed order state that it is the last request for an extension." Plaintiffs' counsel requested a second unopposed extension of time to respond to Defendant's motion to dismiss on May 8, 2014,[5] which was granted and the deadline was extended to May 15, 2014.[6] On May 19, 2014, four days after the deadline passed, Plaintiffs filed the instant Motion for Leave to File Memorandum in Opposition to Defendant Gorman's Motion to Dismiss Out of Time.[7]

Plaintiffs requests leave to file out of time because of "delays caused by [counsel's] personal and professional responsibilities" including obligations in "other pending cases" and "personal obligations surrounding a daughter's graduation from the University of Kansas and to out of town guests."[8] Plaintiffs also do not believe "that any party will be prejudiced if the Court grants leave."[9] Defendant argues in response that there is a danger of prejudice from the substantial delay, that the reason for the delay was within the control of Plaintiffs' counsel, and that there is an absence of good faith stemming from Plaintiffs' counsel not consulting Defendant's counsel about the motion for leave to file out of time.[10] Plaintiffs, in reply, cite counsel's commitments to a jury trial and difficulty properly allocating time.[11]

---

[4]Doc. 83, Ex. 1.

[5]Doc. 80.

[6]Doc. 81.

[7]Doc. 82.

[8]*Id.*, ¶¶ 1–2.

[9]*Id.*, ¶3.

[10]Doc. 83 at 1–3.

[11]Doc. 84, ¶3.

Plaintiffs' counsel has an established pattern of missing filing deadlines set by the Court in this case. The Court previously granted Plaintiffs four extensions of time to respond to previously-filed motions to dismiss,[12] over the course of four months. Although the Court granted the first four motions for extension of time, Plaintiffs filed the third and fourth motions for an extension of time after the deadlines passed.[13] The Court denied Plaintiffs' fifth request because it was filed eight days out of time and did not seek leave.[14] Upon Plaintiffs' motion for reconsideration,[15] the Court reluctantly granted an extension to August 26, 2013, and declared it would not favorably entertain further requests for extension of time.[16] Nonetheless, the response deadline lapsed and Plaintiffs filed the response to Defendants' motions to dismiss one day late on August 27, 2013, without leave.[17]

On September 18, 2013, after the motions to dismiss were fully briefed, Plaintiffs filed a motion for leave to file Second Amended Complaint, with an attached proposed Second Amended Complaint.[18] The proposed Second Amended Complaint replaced the John Doe Defendants with Detective Patrick Greeno and Jerome Gorman, who is the district attorney for Wyandotte County. The Court ultimately granted Plaintiffs' motion to amend as to several claims and denied as futile their motion to amend as to other claims. In ruling on the motions to

---

[12] All Defendants to the original complaint (Doc. 1, Ex. 1) filed the motions to dismiss (Doc.13; Doc. 20).

[13] Third motion filed June 4, 2013 when previous extension lapsed June 3, 2013 (Doc. 27). Fourth motion filed June 19, 2013 when previous extension lapsed June 14, 2013 (Doc. 29).

[14] Doc. 32.

[15] Doc. 35.

[16] Doc. 37 at 2.

[17] Doc. 38.

[18] Doc. 41.

3

dismiss and motion to amend, the Court ordered Plaintiffs to pay the reasonable attorney fees incurred by Defendants Bell and Mill in filing their reply given the prejudice caused by "the Plaintiffs' decisions to seek leave to amend so long after delaying their response to the motions to dismiss, not to file their response along with a proposed amendment to aid in the parties' and Court's analysis, and not to file the proposed amendment until after the reply deadline had elapsed."[19]  Plaintiffs timely filed their Second Amended Complaint on February 7, 2014, which added Defendants Greeno and Gorman.[20]

## II. Discussion

### A. Motion For Leave to File Response Out of Time

Plaintiffs argue the Court should grant their motion for leave to file out of time and allow the untimely-filed response because of delays "caused by personal and professional responsibilities."[21]  Plaintiffs also argue there is no risk of prejudice to any party if allowed to file.[22]

Under D. Kan. Rule 6.1(a):

> All motions for an extension of time to perform an act required or allowed to perform an act required or allowed to be done within a specified time must show:
> (1) whether there has been prior consultation with other parties and the views of other parties;
> (2) the date when the act was first due;
> (3) if prior extensions have been granted, the number of extensions granted and the date of expiration of the last extension; and

---

[19] Doc. 53 at 6.

[20] Doc. 58.

[21] Doc. 82 at 1.

[22] *Id.* at 2.

> (4) the cause for the requested extension. Parties must file the motion before the specified time expires. **Absent a showing of excusable neglect, the court will not grant extensions requested after the specified time expires**.[23]

Excusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[24] On the other hand, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."[25] In determining whether neglect is excusable, the court should consider "all relevant circumstances surrounding the party's omission," including four specific factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."[26] Perhaps the single most important factor in determining whether neglect is excusable is fault in the delay.[27] Whether the moving party's underlying claim is meritorious should also be taken into consideration.[28] Further, "[a] court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay), and whether the attorney attempted to correct his action promptly after discovering the mistake."[29]

---

[23] D. Kan. R. 6.1(a) (emphasis added).

[24] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92 (1993).

[25] *Id.* at 392.

[26] *Id.* at 394–95; *see also Bishop v. Corsentino*, 371 F.3d 1203, 1206-07 (10th Cir. 2004).

[27] *Jennings v. Rivers*, 394 F.3d 850, 856 n.5 (10th Cir. 2005) (citing *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)).

[28] *Id.* at 857 (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983)).

[29] *Id.* (citing *Hancock v. Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

Taking into account all of the *Pioneer* factors, the Court denies Plaintiffs' motion for leave to file, as no excusable neglect is present as required by Fed. R. Civ. P. 6(b)(1)(B) and D. Kan. Rule 6.1(a).

In applying the first *Pioneer* factor—danger of prejudice to the opposing party—there is no evidence of prejudice to Defendant should the Court allow Plaintiffs to file a response out of time because Defendant is still allowed to file a reply. Therefore, the danger of prejudice to Defendant is low.

Regarding the second *Pioneer* factor —the length of delay and its potential impact on the proceedings— while this particular delay was only four days, when looked at cumulatively, Plaintiffs have caused five separate delays by missing deadlines and dilatory filing in this case thus far.[30] The Court has repeatedly granted motions for extension of time to accommodate Plaintiffs, including a total of nearly four months to respond to the earlier motions to dismiss. Despite the Court's leniency in granting extensions, Plaintiffs' counsel persists in missing filing deadlines. Discovery has been stagnant in this case since it was removed on February 20, 2013. The continued extensions and missed deadlines have significantly increased the costs to the parties and undermined judicial efficiency. Plaintiffs' counsel admits that delays have been a problem in the past and stated she "will make every effort to correct this in the future."[31] However, the Court has given Plaintiffs' counsel multiple opportunities to demonstrate her

---

[30] Doc. 27 (filed June 4, 2013, one day after June 3, 2013 deadline); Doc. 29 (filed June 19, 2013, five days after June 14, 2013 deadline); Doc. 31 (filed July 9, 2013, eight days after July 1, 2013 deadline); Doc. 38 (filed August 27, 2013, one day after August 26, 2013 deadline); Doc. 82 (filed May 19, 2014, four days after May 15, 2014 deadline).

[31] Doc. 84, ¶4.

ability to adhere to deadlines and counsel has declined to seize these prior opportunities.[32] There is no indication Plaintiffs' counsel will adhere to Court deadlines in the future given the pattern of missed deadlines in the record and after the imposition of sanctions. This factor, therefore, weighs heavily against a showing of excusable neglect.

The third *Pioneer* factor—the reason for the delay, including whether it was within the reasonable control of the movant—weighs heavily against Plaintiffs as counsel is completely and solely responsible for the failure to timely file the response. Counsel cited professional obligations including other pending litigation and jury trials and personal obligations including out of town visitors and her daughter's graduation. Counsel's workload and the fact that counsel is engaged in preparation of other cases does not excuse disregarding the deadline to respond and does not establish excusable neglect.[33] Counsel certainly had advance notice of all of the professional and personal obligations cited, so this was within counsel's control and is, therefore, not an omission in the nature of "excusable neglect" for which this rule is designed to protect. This factor weighs heavily against Plaintiffs given the repeated pattern of omissions and dilatory practice evidenced by the record.

The fourth factor—the presence or absence of good faith—weighs against Plaintiffs. While Plaintiffs' counsel and Defendant's counsel agreed Plaintiffs' **final** motion for extension

---

[32]The Court granted a motion for reconsideration on the denial of a fifth motion for extension of time, requested out of time to respond to prior motions to dismiss. Counsel then missed the extended deadline granted in that order granting the motion for reconsideration. The Court still accepted the untimely response to the motion to dismiss, but admonished Plaintiffs to take seriously the filing deadlines going forward.

[33]*Ghamrawi v. Case & Assocs. Props. Inc.*, No. 03-6328, 2004 WL 2476459, at *210 (10th Cir. Nov. 2, 2004); *see also McLaughlin v. La Grange*, 662 F.2d 1385, 1387 (11th Cir. 1981).

of time would be the extension requested on May 8, 2014,[34] Plaintiffs' counsel acted with deliberate disregard of that agreement when deciding not to request an extension of time prior to the lapse of the May 15, 2014 passed deadline, and to instead motion after the deadline passed. Defendant contends that Plaintiffs' counsel never sought to confer about the motion for leave to file out of time, as required by D. Kan. Rule 6.1(a).  Once counsel realized she would not meet the deadline, it was incumbent on her to confer with Defendant's Counsel and attempt to seek an extension of time instead of letting the deadline lapse without a request.  Her attempt to circumvent the agreement with Defendant's counsel that she would file a response by May 15 by instead filing a motion for leave to file out of time appears to be a tactical decision.  This along with a pattern of missed deadlines and delays is indicative of bad faith, which weighs heavily against a finding of excusable neglect.

In conclusion, having determined that the weight of the *Pioneer* factors cuts in favor of the denial of Plaintiffs' Motion for Leave to File Out of Time, the Court denies the motion.

**B.    Motion to Dismiss**

Having concluded there is no showing of excusable neglect that would allow Plaintiffs response to be filed out of time, the motion to dismiss is deemed uncontested.  Under D. Kan. Rule 7.4(b),

> Absent a showing of excusable neglect a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, **the court will consider and decide the motion as an uncontested motion.**

As a result of Plaintiffs' failure to respond to the motion to dismiss until after the deadline

---

[34]*See* Doc. 83, Ex. 1 (stating Defendant's counsel had no objections to an extension "provided the motion and proposed order state that this is the last request for an extension.").

passed, the Court grants Defendant's motion to dismiss as uncontested.

Even if the Court proceeds to consider the merits of the motion to dismiss, the Court would grant Defendant Gorman's motion on grounds of: (1) being barred by the statute of limitations, and (2) qualified immunity.

### 1. Statute of Limitations

Plaintiffs' Second Amended Complaint must be dismissed against Gorman because the statute of limitations has run. The Court has previously discussed this issue in ruling on the previous motions to dismiss. The statute of limitations for claims brought under 42 U.S.C. § 1983 are governed by the personal injury statutes for the states in which the federal district court sits.[35] While state law provides the statute of limitations period, federal law determines the date on which the claim accrues and the statute begins to run.[36] In Kansas, the statute of limitations period for personal injury actions is two years.[37]

Under federal law, § 1983 claims generally rely on the common law tort principle that the claim accrues when the plaintiff "has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[38] "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[39] It is not necessary that the

---

[35]*Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 251 (1985)).

[36]*Id.* (citing *Wallace v. Kato*, 549 U.S. 384 (2007)).

[37]K.S.A. § 60-513(a)(4) ("The following actions shall be brought within two years: An action for injury to the rights of another, not arising on contract, and not herein enumerated.").

[38]*Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Febar Corp. Of Cal.*, 522 U.S. 192, 201 (1997)) (citations omitted).

[39]*Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).

plaintiff know of all the evidence that he ultimately relies on for the statute of limitations to accrue.[40] This Court previously ruled that the claims for malicious prosecution that challenge the legal process associated with the charges at issue in this case, and the supervisory liability and official capacity claims associated with those malicious prosecution claims, accrued on the dates of dismissal of the case, August 12, 2011 and February 28. 2011.[41] Therefore, the two-year statute of limitations in this case expired on August 12, 2013, at the latest.

For purposes of the statute of limitations, "an amended complaint that adds new parties . . . may be deemed filed on the date the motion to amend is filed, rather than the date that the plaintiff actually files the complaint after receiving leave of the court."[42] Plaintiffs moved to amend their complaint and add Defendants Greeno and Gorman on September 18, 2013 and filed the Second Amended Complaint on February 7, 2014.[43] Under these facts, the Court should deem Plaintiffs' Second Amended Complaint to have been effectively filed on the date that Plaintiffs filed their motion for leave to amend their complaint and add Defendants: September 18, 2013. Thus, the claims were filed more than two years after the latest accrual date and is therefore time barred.

Plaintiffs argue the claims are not time barred against Defendant Gorman because the Second Amended Complaint relates back to the original complaint pursuant to Fed. R. Civ. P.

---

[40]*Id.*

[41]Doc. 53 at 16–17.

[42]*Farm Credit Bank v. FCB L.P.*, 825 F. Supp. 932, 935 (D. Kan. 1993); *see also Wallace v. Sherwin Williams Co.*, 720 F. Supp. 158, 159 (D. Kan. 1988).

[43]Doc. 41; Doc. 58.

15(c)(1)©. However, Plaintiffs do not meet the criteria for Rule 15(c)(1)(C).[44] An amendment that adds a new party relates back to the original complaint when the party to be brought in by amendment "(1) received such notice of the action such that it will not be prejudiced in defending on the merits; and (2) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[45]

In this case, Defendant Gorman was not associated with the Unified Government of Wyandotte County/Kansas City, Kansas. District attorneys are elected officials and are the executive officers of the judicial district they represent.[46] In no event are district attorneys to be deemed an officer of any county.[47] The original complaint lists "John Doe 1-10, KCKPD and/or UG officials charged with the training and supervision of the above listed Defendants or who committed acts and omissions as herein alleged in their official and individual capacities."[48] However, Plaintiffs presented no allegation in the Second Amended Complaint that Gorman knew or should have known based on the "John Does" listed on the original complaint that the action would have been brought against him but for a mistake concerning his identity, as he is a state officer and has no supervisory role over the KCKPD. Therefore, the Second Amended Complaint adding Defendant Gorman is time barred as against him and does not relate back to the original complaint.

---

[44] Doc. 82, Ex. 1 at 10.

[45] Fed. R. Civ. P. 15(c)(1)©.

[46] K.S.A. § 22a-101(a).

[47] K.S.A. § 22a-101(a).

[48] Doc. 1, Ex. 1.

## 2. Qualified Immunity

Defendant has also successfully invoked qualified immunity to defend against Plaintiffs' claims for supervisor liability. Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known."[49] A plaintiff seeking to overcome the qualified immunity presumption must make a two-part showing: first, that a public official violated the plaintiff's constitutional (or, in the case of a § 1983 action, more generally, federally protected) rights; and second, that these rights were clearly established at the time of the alleged violation.[50] "Because a plaintiff can neither recover under § 1983 from a government official nor overcome the official's assertion of qualified immunity without demonstrating that [the] official violated his constitutional or statutory rights, the legal analysis required to surmount these separate obstacles is often related, if not identical."[51]

When a plaintiff sues an official under § 1983 for conduct arising from supervisory conduct, liability is predicated on a violation traceable to a defendant-official's "own individual actions."[52] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.[53] A plaintiff, therefore, must show an "affirmative link" between the supervisor and the constitutional violation. A showing of this

---

[49] *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[50] *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).

[51] *Dodd v. Richardson*, 614 F.3d 1185, 1193–94 (10th Cir. 2010).

[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[53] *Id.*

"affirmative link" requires, for example, more than "a supervisor's mere knowledge of his subordinate's" conduct.[54]  Over time, this "affirmative link" requirement came to have three related prongs: (1) personal involvement; (2) sufficient causal connection, and (3) culpable state of mind.[55]  In sum, "§ 1983 allows a plaintiff to impose liability upon a defendant supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'"[56]

Plaintiffs have not alleged Defendant Gorman's personal involvement in the supervision of the KCKPD or involvement with the arrest or prosecution of Plaintiffs.  The allegations against Gorman concern his role as a "policymaker, supervisor and trainer" for the Unified Government.[57]  However, as previously explained, he is designated a state officer by statute and "in no event shall . . . be deemed an officer of any county."[58]  He has no statutory authority or duty to supervise the KCKPD.[59]  In the Second Amended Complaint, Plaintiffs allege Defendant Gorman is connected to training sessions designed to punish officers who tell the truth, instituting Internal Affairs investigations against officers who tell the truth, stripping investigators of their ability to investigate by refusing to accept their cases for prosecution, and

---

[54]*Id.*

[55]*Dodd*, 614 F.3d at 1195 (10th Cir. 2010).

[56]*Id.* at 1199.

[57]Doc. 58 at 56 ¶ 254.

[58]K.S.A. § 22a-101(a).

[59]K.S.A. § 22a-104.

13

participating in the concealment of credibility issues of officers.[60]  None of the allegations against Gorman are specifically connected to the officers who allegedly maliciously prosecuted Plaintiffs and most of the conduct alleged is prior to the Plaintiffs interaction with the KCKPD in this case.  These allegations refer to the mistreatment of Officer Max Seifert, who also has no connection to these Plaintiffs under the allegations in the Second Amended Complaint.[61]  Defendant Gorman's personal involvement with the Plaintiffs is far too attenuated.  There is no allegation in the Second Amended Complaint that Defendant Gorman had a culpable state of mind to violate these Plaintiffs' Constitutional rights.  Plaintiffs fail to satisfy personal involvement, causation, or the requisite culpable state of mind.  Therefore, Defendant Gorman has properly invoked qualified immunity and the motion to dismiss may be granted on this basis as well.

**IV.    Conclusion**

In sum, the Court denies Plaintiffs' Motion for Leave to File Response in Opposition to Defendant's Motion to Dismiss Out of Time because there has been no showing of excusable neglect.  When evaluating the four-factor *Pioneer* test to evaluate excusable neglect, the factors weigh heavily in favor of denying the motion for leave.  Although there is no showing of prejudice on the facts, Plaintiffs' counsel has caused lengthy delays throughout the proceedings, the reason for the delay was professional and personal obligations completely within counsel's control, and the repeated delays and failure to conference with defense counsel are evidence of bad faith.  Because Plaintiffs did not meet the standard for excusable neglect, D. Kan. Rule

---

[60] Doc. 58 at 56 ¶254.

[61] Doc. 58 at 29 ¶ 130 ("Defendant Gorman and Terra Morehead began their joint efforts to discredit Seifert and force him out of his reserve commission with the sheriff's office.")

7.4(b) allows the court to "consider and decide the motion as an uncontested motion." Even if the Court were to consider the merits of the motion to dismiss, the Court would still grant Defendant's motion, as the claims are barred by the statute of limitations and Defendant is protected by qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Leave to File Out of Time (Doc. 82) is **denied** and Defendant's Motion to Dismiss (Doc. 74) is **granted**.

**IT IS SO ORDERED.**

Dated: July 9, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE