## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEROME BIRDSONG,

      Plaintiff,

      v.

UNIFIED GOVERNMENT OF KANSAS CITY,
KANSAS, et al.,

      Defendants.

Case No. 13-2090-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Jerome Birdsong brings this action under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments based on unlawful searches, seizures, and prosecutions, excessive force, and denial of due process.  Plaintiff's remaining claims allege individual capacity claims for malicious prosecution against Defendants P.J. Locke, Travis Toms, Steve Haulmark, Nathan Doleshal, Stewart Littlefield, and Phil Trusskey.  Plaintiff alleges supervisory liability claims against Defendants Rick Armstrong and Sam Breshears, and a municipal liability claim against the Unified Government of Kansas City, Kansas ("Unified Government").  Before the Court is Defendants' Motion for Summary Judgment (Doc. 149) on all remaining claims.  Plaintiff has failed to respond to the motion.  The Court therefore deems admitted the facts presented by Defendants in support of their motion for summary judgment, and finds that summary judgment must be granted in favor of Defendants, as described more fully below.

## I.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

---

[1]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[13]

## II.    Failure to Respond

Under D. Kan. Rule 7.4,

> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.  If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.

---

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

[12]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

This standard is modified in the context of a motion for summary judgment: "It is improper to grant a motion for summary judgment simply because it is unopposed."[14]  Under Fed. R. Civ. P. 56(e), the Court may deem a fact undisputed where the nonmoving party fails to address it.[15] The rule also permits the Court to grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[16]

Plaintiff's response was due one week after this Court's ruling on his objection to a ruling by Magistrate Judge Teresa J. James.  The Court denied Plaintiff's objection on September 16, 2016,[17] so the summary judgment response was therefore due on Friday, September 23, 2016. Plaintiff did not respond.  On Monday, September 26, 2016, Plaintiff's counsel, Rebecca Hamilton, sent the Court an email, copying opposing counsel, explaining that she had not completed her response brief and explaining personal circumstances that limited her ability to complete the brief.  She indicated that the brief was in progress.  She sent another email later that day, again indicating that she was in the process of marshaling resources to help her finish the brief.  The next day, on September 27, Ms. Hamilton sent another email indicating further progress.  She indicated in this email that she hoped to keep her personal issues out of documents that are openly filed, and thanked the Court for its patience and understanding.  This is the last email received by the Court, and no response brief has been filed to date.[18]  None of counsel's emails provide this Court with any estimate or indication of when the response brief might be

---

[14]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *EEOC v. Lady Baltimore Foods, Inc.*, 643 F Supp. 406, 407 (D. Kan. 1986)).

[15]Fed. R. Civ. P. 56(e)(2).

[16]Fed. R. Civ. P. 56(e)(3).

[17]Doc. 163.

[18]Counsel's emails are attached to this Order under seal.

forthcoming.  Nor has Plaintiff's counsel attempted to file anything on the record seeking an extension of time, or leave to file out of time.

While the Court is sensitive to counsel's desire for discretion in explaining her delay in responding to summary judgment, given her history of dilatory filings and reprimands from both the undersigned and Judge James about this pattern of conduct,[19] it should be clear to her that an attempt to seek relief by email is insufficient and inappropriate.  Counsel has made no effort to obtain an extension of the summary judgment response deadline, despite the Court's local filing rule that would allow sensitive information to be sealed from public view.[20]  The Court has permitted counsel countless opportunities to file out of time in this case, hoping that the many instances of dilatory filings and missed deadlines were simply oversight, and believing that admonishments on the record would deter future conduct.  The Court was mistaken.  Trial is set next month, and this case has been pending for more than three years.  The time has come for these parties to have finality.  Therefore, the Court denies counsel's informal request for leave to respond out of time and utilizes the procedure set forth in Rule 56(e).  Under Rule 56(e)(2), the Court will deem undisputed the facts presented in Defendants' brief, to the extent they are supported by the record.

## III.  Uncontroverted Facts

The following facts are either stipulated to in the Pretrial Order, or are undisputed.   In May 2010, Plaintiff Jerome Birdsong lived with his then-girlfriend, Rocio Dominguez, and her children at an apartment on South Thompson in Kansas City, Kansas.

***May 3, 2010 Incident (Case No. 10 CR 564)***

---

[19] *See, e.g.*, Docs. 53, 93, 153, and 154.

[20] *See* D. Kan. R. 5.4.6.

On May 3, 2010, Unified Government Police Officers P.J. Locke and Travis Toms were in their patrol car headed south on 10th Street in Kansas City, Kansas when they passed Plaintiff Jerome Birdsong driving a minivan owned by Dominguez in the opposite direction.  Birdsong pulled into a gas station.  Dominguez was riding in the front passenger seat of the minivan— Birdsong had driven the minivan earlier in the day and then picked up Dominguez and her children.  It was not unusual for Birdsong to drive Dominguez's vehicle.  Officer Locke, who was driving the patrol car, recognized Birdsong.  At the time, there were several active warrants for Birdsong's arrest.  Officer Locke, who was aware of the warrants, turned the patrol car around and pulled into the gas station, where he took Birdsong into custody.  A computer check confirmed that Birdsong had outstanding warrants for his arrest and that he had a suspended driver's license.  Officers Locke and Toms noticed the smell of marijuana coming from inside the minivan.  When the officers searched the minivan, they found what appeared to be a half-smoked marijuana cigarette in the front center ashtray, a digital scale underneath the driver's seat, and a green leafy substance in the door on the passenger side of the car that tested positive for the presumptive presence of THC.  Unified Government Sergeant Steve Haulmark, who had arrived on the scene, performed a field test on the cigarette for the presence of THC, the active ingredient in marijuana. The field test was positive.

Dominguez was issued a citation at the scene for misdemeanor possession of marijuana. She later admitted that in May 2010, she smoked marijuana once or twice per day, occasionally in her minivan.  She later pleaded guilty to the charge in municipal court.  Birdsong was transported to the Wyandotte County Detention Center and booked on charges of felony possession of marijuana, possession of drug paraphernalia, and driving while suspended, as well as four outstanding bench warrants.

On May 5, 2010, the Wyandotte County district attorney filed charges against Birdsong for felony possession of marijuana and driving while suspended (Case No. 10 CR 564). Detective W. Michael submitted an affidavit in support of a warrant for Birdsong's arrest, noting that Officer Locke observed Birdsong driving the minivan, knew that he had confirmed warrants, and took him into custody; that Officer Locke and other officers could smell the odor of marijuana coming from the interior of the vehicle; that officers located a marijuana cigarette in the dash ash tray; that the cigarette was field-tested and was presumptive positive for THC, the active ingredient for marijuana; that a digital scale was found under the driver's seat; and that Birdsong previously had been convicted of possession of marijuana.  A district court judge found that probable cause existed for the arrest of Birdsong on the charges in the Information and issued the warrant.  Later that evening, jail personnel, apparently unaware that the warrant had been issued, released Birdsong after his brother posted bond for him on the four bench warrants.

*May 7, 2010 Incident (Case No. 10 CR 588)*

On May 7, 2010, Officers Locke and Toms stopped Dominguez near University of Kansas Medical Center and obtained her help in locating Birdsong.  Dominguez, accompanied by Unified Government Police Officer Nathan Doleshal, drove to the apartment complex where Birdsong and she lived.  When Dominguez and the officers arrived at the apartment complex, Birdsong was outside holding his two-year-old son; Birdsong was obtaining methamphetamine from friends in another car.  When Birdsong saw the police officers, their guns were drawn.  He ran with the child in his arms for twenty to twenty-five feet.  When he approached Dominguez's minivan, he left the child by the car and continued to run.  According to Sergeant Haulmark, and Officers Locke and Toms, Plaintiff threw the child to the ground before he ran.  The child was placed in the care of a neighbor.

Officer Toms tackled Birdsong.  Officers Toms and Locke then muscled Birdsong's arms behind his back and handcuffed him.  Birdsong was holding 14.8 grams of a crystal substance that appeared to be methamphetamine.  A field test of the substance indicated the presence of methamphetamine.

Birdsong was booked into the Wyandotte County Detention Center on the charges filed in Case No. 10 CR 564, stemming from the incident on May 3, as well as on charges of possession of methamphetamine with intent to sell, endangering a child, resisting arrest, and obstructing.  On May 10, 2010, the district attorney filed charges against Birdsong for possession of methamphetamine with intent to distribute, possession of a controlled substance without a tax stamp, and endangering a child (Case No. 10 CR 588).  The affidavit for an arrest warrant recited the circumstances of Birdsong's arrest and the recovery of the suspected methamphetamine. The affidavit stated, "Upon seeing the police, [Birdsong] threw the child to the ground and fled on foot."[21]  A district court judge found that probable cause existed for the arrest of Birdsong on the charges in the Information and issued the warrant.  On May 10, 2010, Birdsong bonded out on the charges and was released.

*May 15, 2010 Incident (Case No. 10 CR 626)*

In May 2010, Unified Government Sergeant Phil Trusskey generally worked the midnight shift, from 12:00 a.m. to 8:00 a.m., at West Patrol Division.  On May 15, 2010, Sergeant Trusskey was on the lookout for a stolen gold Jeep Liberty.  Officers on the previous shift reported that the Jeep had fled from them, and Jerome Birdsong was suspected to be the driver of the Jeep.  Sergeant Trusskey reviewed photographs of Birdsong before heading into the field that morning.  Early on the morning of May 15, 2010, Officer Raymond Nunez advised

---

[21]Doc. 150-8 at 45.

over the radio that he was pursuing a gold Jeep Liberty.  Sergeant Trusskey saw the Jeep, with Officer Nunez in pursuit, coming toward him.  He pulled his car to the side of the road, intending to deploy stop sticks.  He was able to get the trunk open, but by that time the pursuit was bearing down on his position.  Upon seeing Sergeant Trusskey's patrol car, the driver of the Jeep left the roadway and drove through a yard, striking a fire hydrant and a small tree and coming to a stop.

Sergeant Trusskey ran to the Jeep and attempted to open the door.  It was locked.  He yelled at the driver to get out of the vehicle and struck the driver's side window with his right hand, causing it to break.  Sergeant Trusskey reached inside and tried to pull the driver out.  He was giving commands for him to shut off the vehicle and get out.  It appeared to Sergeant Trusskey that both the driver and a male passenger were trying to get the vehicle into reverse.  Sergeant Trusskey reached down and tried to hold the gear shift so they could not put the car into gear.  He unsuccessfully attempted to remove the keys from the ignition.  Sergeant Trusskey's upper body was through the driver's side window, and he was face-to-face with the driver for several seconds.  The driver had close cut hair that appeared shaved and appeared to be of a stockier-type build.  The front seat passenger was a white male with closely cut hair, but was leaner in build.

The Jeep's occupants were able to get the car in reverse and started to back up.  Sergeant Trusskey was still leaning through the driver's side window giving commands and telling the driver to stop.  The Jeep started to accelerate backwards, pulling him with it.  Sergeant Trusskey was able to break away from the vehicle and get clear.  The Jeep got back on the roadway and headed south.  Sergeant Trusskey got in his car and pursued the Jeep until other units were able to take over, at which time he dropped out of the pursuit due to his hand being injured.  The Jeep eventually crossed the state line into Missouri, and the pursuit was discontinued.

Although Sergeant Trusskey had not dealt with Jerome Birdsong in some time, he initially believed Birdsong to be the driver of the Jeep. Later, he returned to West Patrol Division and looked up more recent booking photographs of Birdsong and was able to confirm that he was the person driving the Jeep. Later that day, Birdsong was arrested on charges of aggravated battery on a law enforcement officer (Trusskey) and felony eluding and was booked into the Wyandotte County Detention Center. Unified Government Detective Stewart Littlefield was assigned to investigate the alleged aggravated battery on Sergeant Trusskey. That evening, Detective Littlefield interviewed Birdsong at the jail. Birdsong denied any involvement in the crime, and stated that he was with Dominguez the entire evening. Detective Littlefield was unable to contact Dominguez to confirm Birdsong's statement. He called her cell and left several messages, but did not hear from her. Detective Littlefield also went to her address. The apartment had a locked exterior door, and she would not answer. Dominguez did not contact the Police Department nor speak to Detective Littlefield until two or three weeks after Birdsong was arrested. Much later, Dominguez informed Birdsong's attorney, Rebecca Hamilton, that Birdsong had been with her the night he was alleged to have committed an aggravated battery against Sergeant Trusskey.

On May 17, 2010, the district attorney filed felony charges against Birdsong for aggravated battery on a law enforcement officer and eluding a police officer (Case No. 10 CR 626). On May 17, 2010, Detective Littlefield prepared an Affidavit for Application for Warrant. In the affidavit, he set forth what had reportedly occurred when Sergeant Trusskey had attempted to arrest the driver of the gold Jeep Liberty. He indicated that Sergeant Trusskey had looked up a recent photograph of Birdsong and had positively identified him as the driver of the vehicle. He noted that Birdsong denied any involvement in the crime and stated that he was with

Dominguez the entire evening.  He indicated that he had been unable to contact Dominguez to confirm Birdsong's statement.  A district court judge found that probable cause existed for the arrest of Birdsong on the charges and issued the warrant.  Birdsong remained in jail on the charges.

Subsequently, Detective Littlefield received several inmate communications from Birdsong requesting to speak with him about his case.  In one of the letters, Birdsong stated that Michael Eckstein was the suspect driving the Jeep and Dwayne Harris was the passenger. Detective Littlefield also was contacted by Birdsong's attorney at the time, Anthony Russo, who gave him permission to interview Birdsong.  Detective Michael Vivian and Detective Littlefield met with Birdsong at the jail.  During the interview, Birdsong stated that he had fired Russo and had obtained a new attorney, Rebecca Brock (Hamilton).  After hearing this, the detectives terminated the interview.

After speaking with Assistant District Attorney Mark Menefee, Detective Littlefield interviewed Michael Eckstein, who was in custody at the CCA Correctional Facility in Gardner, Kansas.  Eckstein read the Advice of Rights form, signed the Waiver of Rights, and agreed to give a statement.  He denied being the driver of the Jeep that fled from Sergeant Trusskey.  He also denied any involvement in the crime.  He stated that he did not know Birdsong or Harris. Eckstein stated that during the month of May he was living in Wyandotte County, but mostly stayed at home because he had several active warrants.  At the request of ADA Menefee, Detective Littlefield checked the Wyandotte County and Johnson County inmate databases. Eckstein was not in custody in either facility during the night of the crime.

Detective Littlefield showed a photograph of Eckstein to Sergeant Trusskey.  In the photograph, Eckstein had long hair, a full beard, and a mustache and did not resemble the driver

of the Jeep.  Sergeant Trusskey told Detective Littlefield that Eckstein was not the subject driving the gold Jeep Liberty and maintained that it was Birdsong.  Detective Littlefield also showed him a photograph of Harris.  Sergeant Trusskey told Detective Littlefield he was not sure if Harris was the second subject in the Jeep.  Detective Littlefield never received any concrete proof that Eckstein, not Birdsong, was driving the Jeep Liberty on May 15, 2010.

On February 14, 2011, a preliminary hearing was held in Case No. 10 CR 626. At the hearing, Sergeant Trusskey identified Birdsong as the driver of the Jeep.  The court found that there was probable cause to believe that Birdsong was guilty of the charge of eluding a police officer and the charge of aggravated battery under K.S.A. § 21-3414(a)(1)(C) and bound him over for trial.

A couple of days later, Sergeant Trusskey was in the sergeants' office at East Patrol Division.  At the preliminary hearing, Birdsong's counsel had asked Sergeant Trusskey about Michael Eckstein.  Sergeant Trusskey pulled up booking photographs of Michael Eckstein.  He started looking through them and came across one in which Eckstein had only a slight growth of hair, a light beard, and a mustache.  He then looked at several booking photographs of Birdsong as well.  He printed a photograph of each and compared them.  The photographs of Birdsong and Eckstein were similar in a number of respects.  He started to have doubts about whether Birdsong was the driver.  After his shift, Sergeant Trusskey went home and continued to study the photographs and tried to re-create the incident in his head.

The next day, Sergeant Trusskey had enough doubt that he went into work and immediately notified his commanding officer, who directed him to contact Assistant District Attorney Menefee.  Sergeant Trusskey then called ADA Menefee and advised him of the situation.  He told him he had come to doubt whether Birdsong was the driver of the Jeep and

that, while he still believed that Birdsong may have been the driver, he would not be able in good conscience to testify in court that he was 100 percent positive that it was him.  He also could not be sure Eckstein was the driver.

***Resolution of Criminal Cases Against Birdsong***

On February 28, 2011, the court dismissed the charges in Case No. 10 CR 626 for insufficient evidence.  Two days later, Birdsong was released from jail after posting bond on the charges in Case Nos. 10 CR 564 and 10 CR 588.  Birdsong remained free on bond pending the trials in those cases.

In early April 2011, the court held preliminary hearings in Case Nos. 10 CR 564 and 10 CR 588.  The court found that there was probable cause to believe that Birdsong was guilty of the charges in Case No. 10 CR 564 (felony possession of marijuana and driving while suspended) and bound him over for trial.  In Case No. 10 CR 588, the court found that there was probable cause to believe that Birdsong was guilty of the charges of possession of methamphetamine and possession of a controlled substance without a tax stamp and bound him over for trial.

On April 19, 2011, the State filed a First Amended Information in Case No. 10 CR 588, reasserting the charge of possession with intent to distribute methamphetamine, as well as the other charges in that case.  After a second preliminary hearing on May 18, 2011, the court bound Birdsong over for trial on the charges in the First Amended Information.  On August 11, 2011, Birdsong entered into a plea agreement with the district attorney in Case No. 10 CR 588.  Under the plea agreement, Birdsong would plead guilty to an amended complaint charging him with possession of methamphetamine.  In return, the State agreed to dismiss all remaining counts in Case  No. 10 CR 588 and to dismiss Case No. 10 CR 564 in its entirety.  In a hearing held the

next day, the court accepted Birdsong's plea of guilty to possession of methamphetamine and dismissed all other charges in Case No. 10 CR 588. "[P]ursuant to the plea agreement," the court also dismissed Case No. 10 CR 564.[22]

The court sentenced Birdsong to 15 months' imprisonment on the possession of methamphetamine conviction and placed him on probation.  Birdsong received credit against his sentence for the time that he had been detained at the Wyandotte County Detention Center from May 7, 2010 to March 2, 2011, a total of 296 days.  On August 2, 2013, the Wyandotte County District Court revoked Birdsong's probation in Case No. 10 CR 588 and ordered him to serve his original sentence of 15 months minus the jail credit he had been awarded at the original sentencing.

## IV.    Discussion

This Court has previously dismissed several claims asserted by Birdsong and Dominguez, who was previously a named Plaintiff.[23]  The remaining claims by Birdsong are: (1) a municipal liability claim against the Unified Government for Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983; (2) individual capacity claims against Officers Locke, Toms, and Doleshal, Sergeants Haulmark and Trusskey, and Detective Littlefield for malicious prosecution under 42 U.S.C. § 1983; and (3) a supervisory liability claim against former Police Chiefs Armstrong and Breshears for failure to train or supervise under 42 U.S.C. § 1983.

### A.    Individual Capacity Claims: Qualified Immunity

Defendants move for summary judgment on the individual capacity claims on the basis of qualified immunity.  Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of

---

[22]Doc. 150-7 at 13–14.

[23]Dominguez voluntarily dismissed her claims on April 15, 2016.  Doc. 130.

which a reasonable person would have known."[24]   Qualified immunity leaves "ample room for

mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate

the law."[25]

       As the Tenth Circuit explained in *Rojas v. Anderson*, "because qualified immunity is

designed to protect public officials from spending inordinate time and money defending

erroneous suits at trial," the qualified immunity defense triggers a modified summary judgment

standard.[26]   The initial burden rests on the plaintiff, rather than the defendant; and the plaintiff

must first "clear two hurdles:" (1) demonstrate that the defendant violated his constitutional or

statutory rights; and (2) demonstrate that the right was clearly established at the time of the

alleged unlawful activity.[27]   The court may decide the appropriate order to consider these

issues.[28]   Only if the plaintiff clears these hurdles does the burden shift back to the movant

defendant to make the traditional showing that there are no genuine issues of material fact and

that he is entitled to judgment as a matter of law.[29]

        In determining whether the plaintiff has demonstrated a violation of her constitutional or

statutory rights and that the right was clearly established at the time, the court must view the

facts and draw reasonable inferences in the light most favorable to the party opposing summary

judgment.[30]   In *Scott v. Harris*, the Supreme Court held that "[T]his usually means adopting . . .

the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that

---

[24]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[25] *Malley v. Briggs*, 475 U.S. 335, 341 & 343 (1986).

[26] 727 F.3d 1000, 1003 (10th Cir. 2013).

[27] *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir.2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015).

[28] *Camreta v. Greene*, 131 S. Ct. 2020, 2031–32 (2011).

[29] *Rojas v. Anderson*, 727 F.3d 1003–04 (10th Cir. 2013).

[30]*Scott v. Harris*, 550 U.S. 372, 376–80 (2007).

no reasonable jury could have believed him."[31]   Moreover, citing to the *Scott* decision, the Tenth

Circuit has held that "because at summary judgment we are beyond the pleading phase of the

litigation, a plaintiff's version of the facts must find support in the record."[32]   In that sense, the

court does not discard the Rule 56 process, but relies upon facts supported by the record, while

viewing those facts and reasonable inferences therefrom, in the light most favorable to plaintiff.

Here, the Court determines that Plaintiff is unable to demonstrate a genuine issue of

material fact about whether Defendants violated a constitutional right.   Therefore, the Court need

address the clearly established law prong of the qualified immunity inquiry.

### 1.      Fourth Amendment Malicious Prosecution Claims

Under § 1983, an arrestee can assert a claim for malicious prosecution based on a

violation of the Fourth Amendment.[33]   Plaintiff must allege facts with record support to

demonstrate the following elements of this claim:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2)
> the original action terminated in favor of the plaintiff; (3) no probable cause
> supported the original arrest, continued confinement, or prosecution; (4) the
> defendant acted with malice; and (5) the plaintiff sustained damages.[34]

Defendants argue that there is no evidence that Officers Locke, Toms, and Doleshal, and

Sergeant Haulmark violated Plaintiff's Fourth Amendment right to be free from malicious

prosecution because the original action was not terminated in his favor, and there was probable

cause to prosecute him.   Defendants further argue that Plaintiff fails to come forward with

evidence that there was no probable cause to support the original arrest, or that Sergeant

Trusskey and Detective Littlefield acted with malice.

---

[31]*Id.*

[32]*Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009) (internal quotations and citations omitted).

[33]*Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016).

[34]*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

### a.    Officers Locke, Toms, Haulmark, and Doleshal

The Court agrees with Defendants that Plaintiff cannot meet his burden of demonstrating that the criminal actions involving Locke, Toms, Haulmark, and Doleshal were terminated in favor of Plaintiff.  Abandonment of criminal proceedings alone is insufficient to constitute favorable termination if

> the prosecution [is] abandoned pursuant to an agreement of compromise with the accused; . . . because of misconduct on the part of the accused . . . ; [or] out of mercy requested or accepted by the accused."  These reasons for withdrawal of a charge do not necessarily constitute favorable terminations because they do not "indicate the innocence of the accused" or are at least "consistent with guilt."[35]

Instead, "[t]he 'dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution.'"[36]

Here the uncontroverted facts demonstrate that Case No. 10 CR 564, and the child endangerment and possession without a tax stamp charges in Case No. 10 CR 588 were dismissed pursuant to a plea agreement.  The plea agreement was entered into by the parties after a district judge had already found probable cause to believe Plaintiff was guilty of the crimes in those cases after three preliminary hearings.  Indeed, as one court has observed, "[i]t is rare that a defendant pleads guilty to every charge against him when there are multiple charges."[37]  Accordingly, the dismissals were not based on Plaintiff's innocence.[38]

---

[35]*Id.* (quoting Restatement (Second) of Torts § 659(c) (1977)).

[36]*Id.* (quoting *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997)).

[37]*Guinn v. Unknown Lakewood Police Officers*, No. 10–cv-00827-WYD-CBS, 2010 WL 4740326, at *5 (D. Colo. Sept. 30, 2010).

[38]*See id.* (finding termination in favor of the plaintiff where "dismissals were not entered due to any compromise or plea for mercy."); *Cordova v. City of Albuquerque*, 816 F.3d 645, 653–54 (10th Cir. 2016) (finding dismissal based on speedy trial violation was not indicative of the defendant's innocence).

The Court also agrees that Plaintiff has failed to demonstrate evidentiary support that no probable cause supported the original arrests on May 3 and May 7, 2010, or the original findings of probable cause made by a district judge after three preliminary hearings.  To determine whether the officers had probable cause, the Court asks "whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'"[39]  An officer is entitled to qualified immunity if his "conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."[40]

Plaintiff was charged in Case No. 10 CR 564 with felony possession of marijuana and driving while suspended.  Detective Michael submitted an affidavit in support of a warrant for Birdsong's arrest, noting that Officer Locke observed Birdsong driving the minivan, knew that he had confirmed warrants, and took him into custody; that Officer Locke and other officers could smell the odor of marijuana coming from the interior of the vehicle; that officers located a marijuana cigarette in the dash ash tray; that the cigarette was field-tested and was presumptive positive for THC, the active ingredient for marijuana; that a digital scale was found under the driver's seat; and that Birdsong previously had been convicted of possession of marijuana.  These facts demonstrate that the officers' belief that probable cause existed was objectively reasonable.  Moreover, a neutral judge's issuance of a warrant is "the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'"[41]  There is no evidence in the record that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[42]  Also, in April 2011, the court held a

---

[39]*Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

[40]*Id.*

[41]*Id.* at 1141–42 (quoting *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012)).

[42]*Id.*

preliminary hearing, and found that there was probable cause to believe that Birdsong was guilty of the charges in Case No. 10 CR 564, based on the same facts.

On May 10, 2010, the district attorney filed charges against Birdsong for possession of methamphetamine with intent to distribute, possession of a controlled substance without a tax stamp, and endangering a child (Case No. 10 CR 588).  The affidavit for Birdsong's arrest warrant recited the circumstances of his arrest and the recovery of the suspected methamphetamine.  The affidavit stated, "Upon seeing the police, [Birdsong] threw the child to the ground and fled on foot."[43]   Again, the Court finds that the judge's issuance of the warrant in this case is a clear indication that the officers acted reasonably.

Viewing the evidence in the light most favorable to Birdsong, however, he placed the child on the ground near Dominguez's minivan during the chase in the apartment parking lot and did not throw the child.  Even if this fact is true, the burden is on Plaintiff to "make a substantial showing of deliberate falsehood or reckless disregard for truth by the officer seeking the warrant."[44]   In order to make this showing, Plaintiff must come forward "with evidence that the officer in fact entertained serious doubts as to the truth of his allegations . . . and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations."[45]   There is no evidence in the summary judgment record that Officers Locke, Toms, or Sergeant Haulmark entertained serious doubts about the truth of their allegation that Birdsong threw his child when they completed their reports, or executed the affidavit in support of arrest.  At most, the evidence demonstrates that the officers were mistaken.  By all accounts, the incident on May 7 transpired quickly.  This mistake of fact also does not negate probable

---

[43]Doc. 150-8 at 45.

[44]*Stonecipher,* 759 F.3d at 1142.

[45]*Id.* (quoting *Beard v. City of Northglenn,* 24 F.3d 110, 116 (10th Cir. 2004)).

cause for the child endangerment charge.  All parties agree that Birdsong was holding his small child while he was purchasing methamphetamine before the officers arrived, and that a foot chase ensued.  These facts, along with Birdsong's decision to abandon the child and give chase would have provided the officers with more than a bare suspicion that Plaintiff was guilty of child endangerment.  Indeed, the district court judge found that probable cause existed to bind Birdsong over for trial on these charges.

Officers  Locke, Toms, Haulmark, and Doleshal are entitled to qualified immunity on Plaintiff's Fourth Amendment malicious prosecution claims because there is no evidence that they violated Plaintiff's Fourth Amendment rights.

### b.        Sergeant Trusskey and Detective Littlefield

Defendants argue that there is no evidence that Sergeant Trusskey lacked arguable probable cause to support the original arrest of Birdsong for aggravated battery on a law enforcement officer, and felony eluding, or that Sergeant Trusskey and Detective Littlefield acted with malice in misidentifying Plaintiff as the perpetrator of those crimes on May 15, 2010.

"Malice maybe inferred if a defendant causes the prosecution without arguable probable cause."[46]  It is undisputed that Sergeant Trusskey initially misidentified Birdsong after the May 10, 2010 incident when he submitted the affidavit in support of Birdsong's arrest warrant.  But there is no evidence in the record that would create a factual dispute about whether this misidentification was made with knowledge, or intentionally.  Trusskey's affidavit is clear that this was an honest mistake and that he did not question the identification until after he testified at the preliminary hearing.  He made the initial identification after seeing the driver of the Jeep for only a few seconds, he attempted to look at a photo of Birdsong before initially identifying him,

---

[46]*Id.* at 1146.

and the photograph that Detective Littlefield had originally shown him of Eckstein did not

resemble the driver in Trusskey's view.  But after being cross-examined at the preliminary

hearing, Trusskey pulled additional, more recent, booking photographs of both Eckstein and

Birdsong and began to question his original identification.  This is strong evidence that Trusskey

did not knowingly misidentify Birdsong when completing the arrest affidavit, or when testifying

at the preliminary hearing.

Likewise, the undisputed facts fail to demonstrate that Detective Littlefield acted with

malice in charging Birdsong with aggravated battery and eluding.  Although Birdsong had

provided him with an alibi, Detective Littlefield was unable to locate Dominguez to corroborate

Birdsong's contention that he was with her at the time of the crime.  She avoided contact with

Detective Littlefield until weeks after Birdsong's arrest.  Also, he interviewed Eckstein, who

denied committing the crime.  He reasonably relied on Sergeant Trusskey's identification of

Birdsong.

In addition to failing to establish evidence of malice, qualified immunity protects

Sergeant Trusskey and Detective Littlefield from liability for reasonable mistakes of fact.[47]

Given that there is no evidence to suggest this was not a reasonable mistake of fact, these officers

are also entitled to qualified immunity on Plaintiff's Fourth Amendment malicious prosecution

claims.

### B.    Supervisory Liability Claims Against Former Police Chiefs Breshears and Armstrong

Plaintiff alleges claims against former Unified Government Police Chiefs Sam Breshears

and Rick Armstrong.  Breshears was chief of police from September 2006 until June 2010, and

Armstrong served as chief of police from July 2010 until December 2013.  To be liable under §

---

[47]*Wilkins v. DeReyes*, 528 F.3d 790, 801 (10th Cir. 2008).

1983 under a supervisory liability theory, Plaintiff must demonstrate: "(1) the defendant promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation."[48]   There are no facts alleged in the Pretrial Order about the personal participation of these two defendants.   In fact, Plaintiff's counsel indicated during the Pretrial Conference that she intended to move to amend the Complaint to substitute Defendant Haulmark for Breshears and Armstrong on this count. After the Pretrial Conference, Plaintiff did move for leave to amend and that motion was denied.[49]   Plaintiff's objection to Judge James' ruling denying the motion for leave to amend was also denied.   Given the complete absence of plausible facts alleged to support this claim against Defendants Breshears and Armstrong, dismissal is appropriate either for failure to state a claim upon which relief may be granted,[50] or based on qualified immunity because there is no plausible allegation of a constitutional violation.

### C.      Municipal Liability Claim Against the Unified Government

In order to establish municipal liability under § 1983, a plaintiff must identify a governmental policy or custom that caused the injury, and that the policy was enacted "with deliberate indifference to an almost inevitable constitutional injury."[51]   Plaintiff alleges that the Unified Government violated § 1983 by maintaining policies and customs that caused Birdsong to be deprived of his Fourth and Fourteenth Amendment rights, providing a laundry list of alleged policies and customs covering everything from the government's discovery obligations

---

[48]*Wilson v. Montano*, 715 F.3d 847, 856 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

[49]Docs. 154, 163.

[50]*See* Fed. R. Civ. P. 12(b)(6).

[51]*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

in criminal cases to the use of deadly force.[52]  But Plaintiff fails to allege a custom or policy that caused a violation of his rights, and as already described, Plaintiff has failed to come forward with evidence that his Fourth Amendment right to be free of malicious prosecution was violated by any of the individually named Defendants.  Accordingly, summary judgment is granted on the municipal liability claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 148) is **granted**.  Summary judgment is granted in favor of Defendants on all remaining claims.

**IT IS SO ORDERED.**

Dated: November 17, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[52]Doc. 131 at 21–23.